IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

REO COVINGTON,

                Plaintiff,                  OPINION AND ORDER

    v.

                                          16-cv-217-wmc

WISCONSIN DEPARTMENT OF CORRECTIONS,

                Defendant.

*Pro se* plaintiff Reo Covington is proceeding in this lawsuit against the Wisconsin Department of Corrections ("DOC") on a claim under the Americans with Disabilities Act ("ADA") and Rehabilitation Act. Specifically, in December of 2015, Covington requested to participate in DOC's substance abuse treatment program, the Earned Release Program ("ERP"), and he believes that his request was denied because of his persistent mental illness. Now before the court are several non-dispositive motions filed by plaintiff (dkts. ##34, 53, 54, 55, 58, 59, 68), plaintiff's motion for partial summary judgment (dkt. #43), and defendant's motion for summary judgment (dkt. #48). In this opinion, the court first addresses plaintiff's non-dispositive motions, and then explains why the evidence of record requires judgment in defendant's favor.[1]

---

[1] Among Covington's motions is a request for partial summary judgment because the DOC did not respond by August 21, 2017, deadline set by the court. (Dkt. #53.) However, the record indicates that DOC did, in fact, respond by that deadline. Accordingly, the court will deny that motion without further discussion.

**OPINION**

**I.      Motions for Assistance in Recruiting Counsel (dkts. ##34, 55, 68)**

In multiple motions requesting assistance of counsel, Covington notes that:  he is not a lawyer; he has never been successful in other lawsuits; he lack financial resources to hire an attorney; he suffers from paranoid schizophrenia; and his claim is more complex than he is prepared to handle.  Unfortunately, the starting point for all such requests is that there is no general right to counsel in civil cases.  *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014).  Rather, courts have discretion to grant motions for assistance in recruiting counsel where a party meets several requirements.  *Santiago v. Walls*, 599 F.3d 749, 760-61 (7th Cir. 2010).  The court is satisfied that Covington has established both that he is unable to afford counsel and has made reasonable efforts to find a lawyer on his own without success, but it is simply not apparent that this is one of those relatively few cases in which the legal and factual complexities of the case exceeds the plaintiff's ability to prosecute it.  *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).  This is the case even accepting as a fact that Covington suffers from a mental illness.  *Wheeler v. Radtke*, 694 F. App'x. 1023, 1026 (7th Cir. 2017) (affirming denial of request for counsel despite prisoner's mental health issues because prisoner's filings showed that he understood the relevant legal issues).  Indeed, the operative question is not whether a lawyer will do a *better* job than he can -- that is almost always the case -- but rather whether practically speaking Covington is unable to represent himself.  Even accounting for his mental health challenges, the answer is no for the reasons that follow.

As set forth in greater detail below, Covington's claim in this lawsuit turns on: (1) whether he was qualified to participate in Wisconsin's ERP; and (2) if so, whether the DOC nonetheless denied him access to that program *because* of his disability. While ultimately Covington's claim fails as a matter of law, the court is satisfied that Covington has been able to represent himself adequately as to both issues. For one, Covington has submitted responses to defendant's proposed findings of fact and submitted his own proposed findings of fact, as well as briefing materials in support of his motion for partial summary judgment and in opposition to defendant's motion. His filings are clear and on point, and he consistently cites to relevant case law and facts of record. Furthermore, Covington has submitted multiple pieces of evidence that document his requests to participate in the ERP, as well as relevant discovery responses received from the DOC. All of this illustrates that Covington has been capable of serving discovery on the DOC, following the Federal Rules of Civil Procedure and this court's procedures, and most importantly, drafting coherent motions and legal briefs.

More specifically, those materials highlight that Covington not only understands the required elements of his claim, but was able to present meaningful evidence and thoughtful arguments in support of those elements. Accordingly, while the court is sympathetic to the challenges Covington faces in light of his mental health difficulties, he has demonstrated his ability to meet the demands of representing himself in this lawsuit. As such, the motions for assistance in recruiting counsel will be denied.

## II.    Motion for Leave to Amend Complaint (dkt. #54)

On August 25, 2017, Covington filed a motion asking the court to permit him to amend his complaint to add a Fourteenth Amendment Equal Protection claim to this lawsuit, arguing that the court erred in denying him leave to proceed on a claim that the DOC exercises a policy or practice that treats inmates with a mental health code of Mh-2a differently.  That request will also be denied.

While Covington's claim in this lawsuit stems from an expressed belief that he has been discriminated against, his present motion was the *first* time since the court's screening order in which he has expressed a continued desire to proceed with a Fourteenth Amendment Equal Protection Clause claim.  To the contrary, after the court explained that Covington's first amended complaint violated Rule 20, Covington informed the court on October 3, 2016, that he wanted to proceed on his claims under the ADA and Rehabilitation Act (dkt. #23), on which he was granted leave to proceed against the DOC on December 9, 2016.  (Dkt. #28.)  On February 14, 2017, Magistrate Judge Stephen Crocker further issued the preliminary pretrial conference order in this case explicitly informing Covington that:  (1) to amend his complaint he would need to seek leave of court; and (2) the longer he waited to move to amend, the less likely his motion would be granted. (Dkt. #33, at 3.) Covington never sought reconsideration of the court's order, nor did he seek leave to amend his complaint until August of 2017, which was *after* the date defendant had already filed its motion for summary judgment and plaintiff had filed his own motion for partial summary judgment.

Covington's explanation for this lengthy delay is that he needed counsel to pursue his equal protection claim, which is not particularly persuasive given that Covington has actively advocated for himself throughout these proceedings on more complicated matters. Moreover, it is unclear what an equal protection claim would add to the plaintiff's pending ADA and Rehabilitation Act claims. Regardless, the defendant would be prejudiced by this late addition of a new claim. Accordingly, the court will deny plaintiff's motion to amend. *See Life Plans, Inc. v. Security Life of Denver Ins. Co.*, 800 F.3d 343, 357-58 (7th Cir. 2015) (district courts should "allow amendment unless there is a good reason -- futility, undue delay, undue prejudice, or bad faith -- for denying leave to amend") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Even if the court were to excuse Covington's delay, his request to amend would be denied as futile because he is not a member of a protected class. Covington would have to prove that the DOC had no rational basis for excluding him from the ERP to succeed on a Fourteenth Amendment Equal Protection claim in this context. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 639 (7th Cir. 2007) (absent membership in a suspect class recognized by equal protection case law, plaintiff "must allege facts sufficient to overcome the presumption of rationality that applies to government classifications"). As explained below, the DOC advanced a number of undisputed justifications for denying Covington access to the ERP. Having submitted insufficient evidence to establish a genuine, factual dispute regarding the DOC's justifications for denying his participation in the ERP in response to defendant's motion for summary judgment on his ADA and

Rehabilitation Act claims, the grant of Covington's motion to amend would not change the outcome of this litigation.

## IV.     Motions requesting stay and to compel (dkts. ##58, 59)

In these two motions, Covington points out an error in defendant's proposed findings of fact, specifically that paragraphs 9 and 10 are missing, and requests an order compelling defendant to provide those paragraphs, as well as an order staying his deadline to respond to defendant's motion for summary judgment. Neither request will be granted. As defendant credibly explains, the absence of paragraphs 9 and 10 is a typographical error, and it did not rely on anything from those missing paragraph numbers. Even if that were not the case, any information left out would be privileged work product, to which plaintiff would have no discovery right. Regardless, Covington wisely submitted his response to defendant's motion for summary judgment, ripening defendant's motion for summary judgment, along with his own motion for partial summary judgment.

## V.     Summary Judgment

The court now turns to the parties' motions for summary judgment, beginning with the material facts.

### A.     Undisputed Facts[2]

_____

[2] The court has deemed the following facts materials and undisputed unless otherwise indicated. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the evidence cited in those proposing factual findings as appropriate, with all reasonable factual inferences being made in plaintiff's favor.

### 1. Background

On August 25, 2008, Covington was convicted and sentenced in Dane County Circuit Court to five years imprisonment in Case Number 2002CF0913 for Robbery with Use of Force, to be followed by five years of extended supervision. The sentencing judge in that case determined that Covington was not eligible for Wisconsin's ERP. On August 29, 2008, Covington was placed at the Dodge Correctional Institution ("Dodge") to serve that sentence, and then released on extended supervision on June 12, 2009, having served slightly less than one year of his five-year prison sentence. Based on charges for a further attempted robbery, Covington was taken back into custody in December of 2011, and his extended supervision was formally revoked on February 27, 2012. Covington was again placed at Dodge on March 7, 2012, with a status of "returned from extended supervision." On April 7, 2014, Covington pled guilty in Dane County Circuit Court Case N. 2012CF32 to Attempted Robbery with Threat of Force. This time, Covington was sentenced to prison for three years and two years and six months of extended supervision, to be served consecutive to any other sentence currently being served. Unlike the judge in Case No. 2002C913, however, the sentencing judge in Case No. 2012CF32 concluded that Covington was eligible for the ERP. Before Covington could be eligible for ERP, however, he had to finish the prison sentence imposed in 2002CF0913.

As of December 2015, Reo Covington was incarcerated by the DOC at Racine Correctional Institution ("Racine"). He is currently incarcerated at the Oshkosh Correctional Institution ("Oshkosh"). Because Covington has a diagnostic history of

multiple, psychiatric disorders, the DOC has assigned him a mental health code of MH-2a, meaning that he has a severe and persistent mental illness.

## 2. DOC Inmate Classification Process

The Bureau of Offender Classification and Movement ("BOCM") is responsible for determining the custody, placement and program needs of inmates pursuant to Wis. Admin. Code § DOC 302. All inmates are initially classified by BOCM staff upon arrival at the inmate intake center in the Division of Adult Institutions ("DAI"). The purpose of custody classification is to determine appropriate inmate placement. An inmate is classified under one of the following five custody classification levels, each requiring different levels of monitoring, behavior and activities: (1) maximum, (2) medium custody, (3) medium-out custody, (4) minimum custody, and (5) community custody. Wis. Admin. Code § DOC 302.05. BOCM staff are to consider numerous factors in assigning a custody classification:

    a. The nature and seriousness of the offense the inmate was convicted of. In evaluating the seriousness of the offense, the department may consider the following:
        i. Potential of physical danger to another.
        ii. Harm done to the victim in the commission of the offense.
        iii. Whether the inmate exhibited physical aggressiveness that exposed another to harm.
        iv. Aggravating or mitigating factors in the commission of the offense for which the inmate was convicted.
    b. The inmate's criminal record and juvenile delinquency adjudications.
    c. The length of sentence being served.
    d. The inmate's motivation for the crime convicted of.
    e. The inmate's attitude regarding the offense and sentence.
    f. The inmate's record of adjustment and misconduct including any record of escape from a department facility, IS, a mental health facility, a local jail or any other confinement facility, or absconding from probation, parole, or extended supervision.

g. The length of time the inmate has been in a particular custody classification and overall time served during the current period of incarceration.

h. The inmate's medical and clinical needs, including physical or psychological treatment and observation.

i. The risk to a victim, witness, the general public or the inmate of placing the inmate in the community where the offense was committed or where the institution is located. In determining this risk, the department may consider the general public's perception of the offense and the inmate as evidenced by statements of elected officials, judges, sheriffs, district attorneys, a victim, or a witness.

j. The inmate's performance or refusal to participate in programs or treatment.

k. A pending legal process, notification or detainer.

l. Parole commission actions and stated expectations, and in the absence of any stated expectations, the likelihood of a release during the review period.

m. The results of specially designed and researched risk rating instruments developed to assist with the individualized and objective assessment of a custody classification or program and treatment assignments and placements.

n. The inmate's vulnerability to physical assault by other inmates.

Wisconsin Admin. Code § DOC 302.07.

At the initial classification of an inmate, BOCM staff also determine the inmate's custody, placement and programming needs. After an initial classification, inmates' classifications are then reviewed at 12-month intervals, or sooner as required, by a Program Review Committee or "PRC," sometimes also referred to as a "Classification Committee." Wis. Stat. § 302.17. Accordingly, each DOC institution has staff on-site who serve as members of a PRC for purposes of considering reclassification, which can be appealed to BOCM. *Id*.

3. **The Wisconsin Earned Release and Mentally Ill Chemical Abuse Treatment Programs**

A substance abuse treatment program, ERP, is administered by the DOC pursuant to Wis. Stat. § 302.05 and DAI Policy and Procedure #300.00.12. For an inmate to be approved for ERP, he must be eligible *and* suitable for the program. While eligibility for

ERP is first determined by the sentencing court, along with any court-imposed conditions, the DOC also makes a suitability determination, which is discretionary and does not include any one factor that qualifies or disqualifies the prisoner from participation. In making that determination, DAI policy specifically sets forth multiple criteria that inmates must meet to be deemed suitable for the program, including "minimum or community custody." (*See* Ex. 1000 (dkt. #52-1) at 5.)

The DOC also has a program geared towards prisoners that receive a "Dual Diagnosis," meaning that they have a mental health code of MH-2a, as well as Alcohol and Other Drugs of Addiction ("AODA") treatment needs. The Mentally Ill Chemical Abuse Treatment Program ("MICA") is a 9 to 11 month, Dual Diagnosis residential program. Oshkosh is the DOC's sole institution offering the MICA program, so that program's coordinator is located there. The MICA program coordinator works with the PRCs at various DOC institution on MICA placements. In particular, under DAI Policy #500.70.23, the Psychological Services Unit ("PSU") at each institution is responsible for determining whether prisoners are eligible and suitable for MICA. Therefore, the PRC's rely on PSU staff to determine whether to recommend MICA placement. Then, the MICA coordinator makes the final determination about whether an inmate should be placed in MICA. To qualify for MICA under DAI Policy #500.70.23, a prisoner must have a Dual Diagnosis, cannot have completed a traditional AODA program and is assigned "medium or lower" custody. (*See* Ex. 1002 (dkt. #52-3) at 4.)

4.      **Covington's December 2015 PRC**

On December 15, 2015, Covington appeared at his annual reclassification hearing before the Racine PRC or Classification Committee. In preparation for that hearing, social worker D. Bogucki performed a pre-hearing interview with Covington on November 13, 2015. Following the interview, Bogucki noted that: Covington had recently returned to Racine from the Wisconsin Resource Center ("WRC"); his "compass score" was low; and Covington had completed several programs while he was at the WRC, including Anger Management, Thinking for a Change, and Men's Trauma Group. Bogucki also noted that Covington was requesting a recommendation for ERP placement based on his low compass score. Finally, Covington expressed an interest in being transferred to Black River Falls, Chippewa Falls or Wisconsin's Drug Abuse Correctional Center, or in the alternative, the Burke Center in Waupun, Wisconsin, to work.

Despite Covington's requests, Bogucki did not recommend him for a reduced custody classification or ERP. Instead, Bogucki recommended that Covington remain at Racine due to his institution adjustment. Bogucki did recommend, however, that Covington's wishes should be reviewed at his next reclassification hearing. Finally, Bogucki listed two programming needs: AODA primary and pre-release curriculum.

During the December 15 hearing, the Racine Classification Committee consisted of Thomas Wiegand, J. Gloudemans and Kimberly Marks. The chairperson was Kimberly Marks, a classification specialist from the BOCM. Covington appeared in person and reasserted his request for ERP placement or placement at a minimum security facility. The Classification Committee rejected both requests, concluding that Covington was both

11

ineligible and unsuitable. As to his eligibility, the Classification Committee concluded that Covington did not meet the criteria for ERP because his first judgment of conviction in Case No. 2002CF00913 determined that he was ineligible. (Ex. 1005 (dkt. #52-6) at 5.)

However, the Classification Committee also provided more details with respect to suitability. In particular, the Classification Committee acknowledged that his adjustment had improved, despite having received four minor and two major conduct reports since his re-incarceration, but was troubled by his last major conduct report from January 6, 2015, for assault. Specifically, the Committee focused on the fact that Covington had been seen hitting another inmate several times with a closed fist and had not complied with directives by the correctional officer to stop. (Ex. 1005 (dkt. #52-6) at 2.) Covington denies that he failed to comply with staff's directives, pointing out that the actual, written conduct report stated that he *did* comply, but Covington neither denies the assault itself, nor that he received a major conduct report for the incident.

The Classification Committee went on to note that Covington was on the wait list for Alcohol and Other Drug Addiction Dual Diagnosis ("AODA-DD") and pre-release curriculum, and he was enrolled in and had completed multiple programs. As such, the Classification Committee recommended continued custody at the medium security level based on his current offense, offense dynamics, assaultive conduct during his incarceration, his AODA-DD needs, and his clinical issues, all of which made him unsuitable for ERP. Instead, the Classification Committee recommended transfer to Oshkosh for the Dual Diagnosis program. Although the records did not explicitly state as much, it appears that meant that Covington was receiving a MICA referral.

### 5. Covington's Objections to Placement Recommendation

Covington objected to the Committee's conclusions, arguing that he was eligible for ERP as of November 23, 2015, because he finished his re-incarceration period for Case No. 2002CF913 on that date, an assertion that remains in dispute. DOC's position is that Case No. 2002CF0913 was *not* discharged while Covington was incarcerated at Racine, citing in support a statement by Kimberly Marks. (*See* Def.'s PFOF (dkt. #52) ¶ 36.) For his part, Covington avers that his re-confinement period of four years was complete on November 23, 2015, just days after his pre-hearing meeting with a social worker to address his ERP request and roughly 3 weeks before appearing before the Classification Committee. (Ex. P-012-A (dkt. #65-2) at 1.) The document Covington cites in support, which he labels Ex. P-012-A, is a form that appears to include a computation of his re-incarceration period completed by a DOC employee in 2012. This document has not been authenticated by either party; and even assuming Covington's familiarity with the document is sufficient to authenticate it, the document does not include an explicit statement that Covington's re-incarceration period for Case No. 2002CF0913 was complete on November 23, 2015. Rather, as best the court can discern, it appears to be a projection by a DOC employee that Covington *would* complete his four-year re-confinement period on November 23, 2015, absent intervening misconduct.

Still, the court cannot conclude that Ms. Marks' single assertion that Covington had not completed his sentence for Case No. 2002CF913 while housed at Racine is controlling, given that Covington avers otherwise and defendants fail to provide *any* calculation, much less admissible business record showing otherwise. As such, there is a

genuine dispute as to when exactly Covington completed his re-incarceration period for Case No. 2002CF913, which is likely why the DOC relies upon the Classification Committee's independent conclusion that Covington was not an appropriate candidate for the ERP, or at minimum, a better candidate for AODA-DD at Oshkosh.

During the hearing, Covington complains further that Marks told him she did not believe Covington was capable of handling the intensive programming of ERP due to his serious mental illness. Covington also complains that Marks told him that she would recommend that Covington do work release in a minimum security center if he completed the recommended program. Covington again objected, stating that he believed Marks was discriminating against him for having a mental illness, and Marks responded by suggesting that he finish the program so that he could make money before going home in 2018.

### 6.    Transfer and Appeal

Notwithstanding his objections, on December 30, 2015, Linda Fait approved his transfer to Oshkosh. Covington appears to have been physically transferred on February 22 or 23, 2016, and was entered into MICA, although he withdrew from the program shortly thereafter. In March of 2016, sometime after Covington received the written results of the PRC, Covington filed an Administrative Review, arguing that the PRC suffered from three errors: (1) Covington was eligible for ERP under his April 7, 2014, second judgment of conviction and his prison sentence on the first conviction was completed on November 23, 2015; (2) the Dual Diagnosis program was an attachment to his first conviction and he did not have time to complete that program through no fault of his own; and (3) the findings related to his institution adjustment were improper because

(a) the conduct report indicated that Covington *did* comply with staff's directive to stop hitting another inmate, and (b) Covington completed four other programs after that conduct report. Covington also argued out that even though the Classification Committee noted that he had been convicted of Robbery with Threat of Force, he had actually pled guilty to Attempted Robbery with Threat of Force in Case No. 2012CF32.

Section Chief Gerald Konitzer received Covington's request for review on February 16, 2016, and affirmed the PRC. In doing so, Konitzer wrote in particular that it was unclear how Covington came to believe that he completed his revocation sentence on November 23, 2015, because Covington had been sentenced to *five* years of confinement at the time of revocation and he was admitted to the DOC on March 7, 2012. (*See* P-001 (dkt. #6-1).) Konitzer did not specifically address Covington's other arguments.

### 7. March 1, 2017 PRC

Another PRC was scheduled for March 1, 2017. During Covington's pre-hearing interview with social worker Van Linn, Covington again requested ERP, stating that he felt that his mental health issues should not be held against him for early release. Van Linn noted that: Covington had participated in reviewing his case plan and continues to work on his skills; Covington has completed T4C and Anger Management; Covington withdrew from Dual Diagnosis AODA against staff advice; and Covington believed he was eligible for ERP. In light of Covington's withdrawal from the AODA program, Van Linn ultimately recommended that Covington remain at Oshkosh. (Ex. 1007 (dkt. #52-8) at 3.)

During the March 1, 2017, PRC hearing, the Classification Committee noted that even though Covington was at that point eligible for ERP, he was not suitable for the

program. Specifically, even though at that point the DAI had expanded the ERP policy to include the MICA program, PSU concluded that Covington was *not* eligible, recommending continued medium custody and retention in Oshkosh.

## B.    Merits Discussion

The court granted plaintiff leave to proceed against the DOC on a claim under the ADA and Rehabilitation Act arising from the December 2015 decision to deny him entry into the ERP.  Plaintiff's claim under both Acts is that defendant discriminated against him on the basis of his mental illness. The parties each seek judgment in their favor.

The Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134, prohibits discrimination against qualified persons with disabilities.  To establish a violation of Title II of the ADA, a plaintiff "must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability."  *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (*citing Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (citing 42 U.S.C. § 12132)).   State prisons are considered public entities under the ADA. *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998) (citing 42 U.S.C. § 12131(1)(B)).  The Rehabilitation Act claim is functionally identical, requiring the plaintiff to prove that:  (1) he is a qualified person (2) with a disability and (3) the state agency denied him access to a program or activity "solely by reason of" his disability. *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006).  For

16

the Rehabilitation Act to apply, the relevant state agency (here the DOC) must accept federal funds, which all state department of corrections do. *Id.* at 671.

Here, plaintiff argues that the evidence of record establishes that (1) he was qualified for the ERP and (2) the DOC discriminated against him because of his mental illness. On the flip side, defendant seeks judgment in its favor on two grounds. First, plaintiff was not and is not a qualified individual with a disability because he was not eligible for the ERP when he filed this lawsuit, and even when he became eligible, he was not and is not suitable for participation. Second, defendant argues that the record does not support a finding that it discriminated against him because of his mental illness. On this record, the court agrees that judgment in defendant's favor is appropriate, both because plaintiff was not qualified for ERP as of December 2015 and because the record does not support a finding that the Classification Committee rejected his request *because of* his mental illness.

### 1. Qualified Individual

To receive protection under Title II of the ADA or the Rehabilitation Act, plaintiff must be a "qualified individual." Under the ADA, a qualified individual is an "individual with a disability, who, with or without reasonable modification to rules, … meets the essential eligibility requirements for the … participation in programs or activities provided by a public entity. § 12131(2). To prove that he is "otherwise qualified" under the Rehabilitation Act, a plaintiff must show that he would have qualified for the program to which he was denied were it not for his disability. *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 120-21 (7th Cir. 1997).

Defendant argues that Covington was not qualified to participate in the ERP on two separate grounds: (a) as of the December 2015 PRC, Covington's first sentence in Case Number 2002CF913 that explicitly excluded him from ERP, had not been discharged; and (b) regardless of which sentence controlled at the time, the Classification Committee also had to conclude that Covington was *suitable* for ERP, which was precluded in substantial part because of Covington's January 2015 major conduct report for assaulting another inmate. More particularly, defendant's position with respect to suitability is that Covington has been, and continues to be, unsuitable because of his medium security classification.

### a. Eligibility

Defendant argues that the December 2015 PRC properly rejected Covington's ERP request because his 2002CF913 sentence had not yet been discharged and it explicitly excluded him from participation in the ERP. As described above, plaintiff challenges this argument based on his own understanding about when his re-incarceration period ended and a single piece of evidence -- Exhibit P-012A -- which is unauthenticated and does not establish that Covington had completed his sentence for Case No. 2002CF913 as of the December 2015 PRC hearing. Instead, that DOC form, entitled "Escapee/Violator (ES)," is dated March 19, 2012, which was shortly after plaintiff was re-incarcerated by the DOC after his supervision was revoked. While the document appears to have been initialed by two individuals at Dodge, plaintiff provides no evidence as to who those individuals are and how the inclusion of the November 23, 2015, date on the "ES" line definitively establishes that his re-incarceration period ended on that date. However, plaintiff *has* also

averred that when he arrived at Dodge, the DOC set his release date at November 23, 2015, which the court cannot ignore for purposes of summary judgment absent definitive evidence by the defendant to the contrary, which should not have been that difficult for the DOC to produce if the issue were not reasonably disputed. As such, the court cannot conclude as a matter of law that plaintiff was not *eligible* for ERP as of his December 2015 PRC.

b.     **Suitability Finding**

Assuming Covington's eligibility, however, no reasonable trier of fact could find suitability for ERP, much less reasonably find that the Classification Committee otherwise acted irrationally in finding the plaintiff's medium security level should be maintained. Nevertheless, plaintiff challenges the Classification Committee's finding by arguing that the summary provided to the Classification Committee regarding his January 2015 conduct report was inaccurate. Plaintiff goes further, asserting without an evidentiary basis that the inaccuracy is the product of intentional falsification. While the court agrees the Classification Committee appears to have inaccurately concluded that plaintiff refused to comply with a staff's directives, his falsification assertion is completely lacking in support.

More importantly, there is no dispute that plaintiff was found guilty of the underlying conduct: assaulting another inmate with a closed fist. Given that one of the factors the Classification Committee considers at the PRC was plaintiff's record of *assaultive* conduct during his incarceration -- rather than whether he responded to staff directives -- the court does not believe a reasonable jury could find that the Classification Committee

would have found plaintiff eligible for minimum security but for plaintiff's mental health illness.

Plaintiff also challenges the December 2015 suitability finding on the ground that the DOC has a rule precluding consideration of his January 2015 conduct report. However, neither counsel nor the court has been able to identify a policy or representation by DOC staff that sets forth, or even alludes to such a rule. Even if this purported rule existed because previous misconduct should not forever inform security classifications, plaintiff cites no authority that would require the Classification Committee to *ignore* an inmate's physical assault occurring in the same year as the ERP hearing. Furthermore, the Classification Committee did not assign plaintiff to medium security *solely* on the basis of the January 2015 conduct report. It also listed plaintiff's convictions for robbery and attempted robbery, the dynamics of the convictions, and his drug and rehabilitation need as additional factors warranting the medium security classification. As the DOC's classification policy permit incorporation of these factors when making classification decisions, and plaintiff has submitted no evidence that contradicts these underlying factors, plaintiff has not created a genuine factual dispute as to whether he was suitable for the ERP.

Finally, plaintiff describes in detail all of his efforts to participate in and completion of programming that he contends should have worked in his favor. The court neither discounts the value of these programs, nor the effort plaintiff undoubtedly put into completing and participating in them. However, plaintiff's participation in programming does not require DOC to give him a minimum security classification. Rather, as explained

above, the Classification Committee may consider a number of factors, which incorporated *both* Covington's programming participation *and* his misconduct record. While the Classification Committee's report recognized Covington's efforts and accomplishments with respect to programming, and incorporated those factors into its security placement decision, it did not foreclose the Committee's exercise of discretion in still reaching a medium security classification. At end, Covington has not submitted evidence that would permit a reasonable trier of fact to find he was suitable for ERP in December of 2015, much less that the Classification Committee would have so found were it not for his mental illness.

### 2. Reason for ERP denial

Finally, even assuming that the court agreed that Covington was both eligible and suitable to participate in the ERP (and thus a "qualified individual"), the evidence of record does not support a finding that Covington's ERP request was denied because of his persistent mental illness. The Seventh Circuit has explained that "discrimination under both [the ADA and Rehabilitation Act] may be established by evidence that (1) defendant intentionally discriminated on the basis of disability, (2) the defendant refused to provide a reasonable accommodation, or (3) the defendant's rule disproportionately impacts disable d people." *Washington v. Indiana High Sch. Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999).

While the ADA and Rehabilitation Act have slightly different causation standards, under either standard, there is no violation if there is any reason for the exclusion, "*even if the reason is the consequence of the disability*." *See Brumfield v. City of Chicago*, 735 F.3d 619,

631 (7th Cir. 2013) (emphasis added).  While the language of the ADA suggests a lower standard, the Seventh Circuit has treated any difference as a distinction without a difference.  *See Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010) (holding that the ADA's "because of" language requires a "but-for" causation standard, providing no room for the more lax motivating factor standard in Title VII claims); 7th Cir. Jury Instr. § 4.02 (2015 rev.), http://www.ca7.uscourts.gov/Pattern_Jury_Instr/7th_cir_civil_instructions.pdf (defining causation requirement under the ADA as "Defendant would not have [taken action] if Plaintiff had not had a disability, but everything else had been the same.").  Here, plaintiff appears to argue both that defendant discriminated against him because of his disability and that the DOC's policies disproportionately affect disabled persons.

The latter theory is rejected without further discussion because plaintiff does not develop it with any evidence beyond his flat assertions.  As to the former theory, while plaintiff has submitted both argument and evidence, it cannot succeed on this record.  To that point, the Classification Committee's December 2015 written decision shows its members understood that Covington was still serving his sentence for Case No. 2002CF913, and the record does not support a finding that the Classification Committee had any reason to believe plaintiff completed his re-incarceration period for that case as of December 2015.

While plaintiff attempted to convince Social Worker Bogucki and the Classification Committee that he *had* served the entirety of his re-incarceration period as of the December 2015 PRC, there is no evidence suggesting that Bogucki or any Committee member had

reviewed Ex. P-012-A or otherwise had reason to know that plaintiff was correct, notwithstanding Mark's comment that could suggest otherwise. Indeed, the court cannot ignore the definitive statement in *both* the classification committee report and the result of plaintiff's appeal, that everyone within DOC who reviewed his PRC concluded that he had not yet completed serving his confinement period for Case No. 2002CF913, thus prohibiting participation in the ERP. As a result, even if the Classification Committee had erred in its eligibility determination, it is not proof that the Classification Committee denied plaintiff's ERP request *because of* his mental illness. On the contrary, even when a Classification Committee found he *was* eligible more than a year later, when he was serving time under his second judgment of conviction, it again found him not suitable for a minimum security classification necessary to participate in ERP.[3]

Next, plaintiff's challenge to the suitability finding, while slightly more persuasive, is ultimately unsuccessful. Plaintiff points to Marks' comments during the December 2015 PRC that his mental illness would make it very difficult for him to participate in ERP as evidence that could lead a reasonable juror to conclude plaintiff was denied ERP because of his mental illness. However, Marks' statement suggests at most that she did not believe that the ERP was appropriate for him because of his mental illness, but that comment, at least alone, does not permit an inference that his ERP request was denied *because of* his mental illness.

---

[3] In fairness, by then Covington had actually refused to participate in the MICA program at Oshkosh to address his mental illness, but this underscores DOC's continuing view that he needed mental health programming before going to minimum security.

As an initial matter, even though Marks presided over the hearing, she was not the only decision-maker. Rather, the Classification Committee as a whole rejected Covington's request for ERP at that point, and the record does not support a finding that his mental illness was the only basis for the rejection. The Classification Committee's suitability determination relied on its finding that Covington should remain at a medium classification, based on *several* factors set forth in Wis. Admin. Code § DOC 302.07. While the report listed Covington's mental health needs as *one* of the factors requiring medium security classification, other factors included his incarceration conviction and his more recent assault of another inmate at Racine. As noted above, while Covington takes issue with the *description* of his reaction to staff directions during the assault, he does not dispute assaulting another inmate, nor does he dispute that the Classification Committee did, in fact, list additional factors besides need for mental health programming when determining his security classification.

Accordingly, while a reasonable fact-finder could conclude that Marks believed Covington's mental illness made him an inappropriate candidate for ERP, a reasonable fact-finder could not conclude that *but for* plaintiff's mental illness, the Classification Committee would have granted his ERP and minimum security requests in December of 2015.[4] As such, the court will grant the DOC's motion for summary judgment, deny plaintiff's motion for partial summary judgment and enter judgment in the DOC's favor.

---

[4] While the court did not grant plaintiff leave to proceed with respect to the March 2017 PRC, in which the Classification Committee again rejected his request for ERP and medium custody, the court would have reached the same conclusion. Indeed, the record of that decision shows plaintiff was not recommended for the program because he dropped out of the MICA program, again making him unsuitable for ERP. Given that plaintiff does not dispute dropping out of the program, it would

ORDER

IT IS ORDERED that:

1. Plaintiff Reo Covington's motions (dkts. ##34, 53, 54, 55, 58, 59, 68) are DENIED.

2. Plaintiff's motion for partial summary judgment (dkt. #43) is DENIED.

3. Defendant's motion for summary judgment (dkt. #48) is GRANTED.

Entered this 12th day of March, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

be unreasonable to conclude that the Classification Committee's March 2017 decision was made because of plaintiff's mental illness.